**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 17-cv-02626-CMA

WILLIAM DANIEL HARDIN,

      Applicant,

v.

TERRY JAQUES, Warden,
CYNTHIA COFFMAN, Attorney General of the State of Colorado,

      Respondents.

---

## ORDER DENYING AMENDED APPLICATION FOR WRIT OF HABEAS CORPUS

---

The matter before the Court is an Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 filed *pro se* by Applicant. (Doc. # 6). The Court has determined it can resolve the Application without a hearing. *See* 28 U.S.C. § 2254(e)(2); Fed. R. Governing Section 2254 Cases 8(a).

## I.     BACKGROUND

In 1988, Mr. Hardin was convicted by a jury of two counts of aggravated robbery, two counts of felony murder, and two counts of murder after deliberation. He was sentenced to consecutive terms of sixteen years for each aggravated robbery conviction and life imprisonment for each felony murder.

The Colorado Court of Appeals provides the following detailed account of the background in this case:

Hardin was accused of robbing three men, Isaac Fisher, Victor Irving, and Lloyd Rhodes, and of killing two of the men, Fisher and Irving. The prosecution charged Hardin with one count of aggravated robbery for the robbery of all three men and with two counts each of felony murder and murder after deliberation with respect to the killings of Fisher and Irving. When Hardin's 1988 trial concluded, the jury found him guilty by separate verdict forms of two counts of aggravated robbery regarding Irving and Rhodes and two counts each of felony murder and murder after deliberation with respect to Fisher and Irving. The jury acquitted Hardin of the aggravated robbery count with respect to Fisher.

The trial court entered a judgment of conviction and sentenced Hardin to consecutive terms of imprisonment of sixteen years for each aggravated robbery conviction and life for each felony murder conviction. It did not sentence Hardin on the murder after deliberation convictions.

Several months after the trial, Hardin filed a notice of appeal regarding the judgment of conviction. Soon after, he requested and was granted a limited remand to pursue an ineffective assistance claim, pursuant to Crim. P. 35(c), concerning his trial counsel. To avoid a conflict of interest, the public defender's office was allowed to withdraw from the postconviction proceedings and the appeal. In granting the remand in 1991, a division of this court ordered that the postconviction proceedings "be done with all due speed."

Over the next six years, the postconviction court appointed a succession of private attorneys to represent Hardin; they all withdrew before resolution of the proceedings. The postconviction court repeatedly set the matter, only to later vacate the settings. Hardin repeatedly expressed frustration with his legal representation and with his appointed attorneys' lack of action in the postconviction court and in this court.

A division of this court eventually vacated the limited remand and decided Hardin's direct appeal in 1997, about ten years after Hardin committed the underlying crimes. *See People v. Hardin*, (Colo. App. No. 88CA1898, Dec. 18, 1997) (not published pursuant to C.A.R. 35(f)) (*Hardin I*). That division affirmed Hardin's convictions, but it remanded with instructions for the trial court to vacate the felony murder conviction concerning Irving's death, enter a judgment of conviction for the count of murder after deliberation concerning Irving's death, and resentence Hardin accordingly. *Id.* That division also concluded that Hardin's ineffective assistance of counsel claims should be considered in a postconviction proceeding. *Id.*

Hardin later filed a pro se Crim. P. 35(c) motion raising numerous claims,

including ineffective assistance of counsel.  The postconviction court denied the motion in 1999 without holding a hearing, appointing counsel, or resentencing Hardin in accordance with the remand instructions. Hardin appealed the 1999 order denying his postconviction motion.  In December 2000, a division of this court reversed the order and remanded with instructions to hold further proceedings on Hardin's postconviction claims and to comply with the 1997 remand instructions regarding resentencing. *See People v. Hardin*, (Colo. App. No. 99CA2405, Dec. 21, 2000) (not published pursuant to C.A.R. 35(f)) [(*Hardin II*)].

After the remand, the postconviction court appointed another attorney to represent Hardin in April 2001.  Over the next four years, and after the postconviction court allowed several extensions of time to supplement Hardin's pro se Crim. P. 35(c) motion, Hardin's appointed counsel failed to file any supplement.  Meanwhile, Hardin made numerous pro se filings expressing his frustration with his attorney's inaction and his desire to obtain adequate counsel.  In response to the inactivity in these proceedings, the postconviction court appointed Hardin's current attorney in February 2005.

Almost eight years later, in December 2012 – about twenty-four years after trial and about twelve years after Hardin filed his original Crim. P. 35(c) motion – the third and final trial judge to preside over this case since the 2000 remand issued an order mandating that Hardin's postconviction proceedings "get moving."  Thereafter, Hardin's attorney filed two supplemental briefs in support of his motion for postconviction relief.  The postconviction court held an evidentiary hearing over three days on the matter.  After the hearing, the postconviction court denied Hardin's motion. In denying the motion, the postconviction court stated that the twelve-year delay in the postconviction proceedings "did not amount to a remedial due process violation . . . and, perhaps most importantly, did not legally prejudice [Hardin]."

(Doc. # 13-9 at 2-6) (*People v. Hardin*, 405 P.3d 379 (Colo. App. 2016) (*Hardin III*).

Following the trial court's lengthy written order, issued on February 26, 2014, denying Mr. Hardin's postconviction claims, (Doc. # 13-7), he appealed the denial, (Doc. # 13-8).  The Colorado Court of Appeals affirmed the denial of his postconviction claims on December 1, 2016. *Hardin III*, (Doc. # 13-9).  The Colorado Supreme Court denied certiorari review on October 16, 2017.  (Docs. # 13-10 and 13-11).

Mr. Hardin filed the instant federal habeas corpus action on November 2, 2017. (Doc. # 1). In the Amended Application, filed on November 28, 2017, Mr. Hardin asserts the following ten claims for relief:

1. Mr. Hardin's convictions for felony murder and aggravated robbery are invalid because the jury failed to convict him of the charged aggravated robbery which served as the underlying felony for the aggravated murder. This violated the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution;

2. It was improper for Mr. Hardin to be convicted and sentenced for aggravated robbery when that aggravated robbery served as the predicate felony for a felony murder conviction;

3. The over eight year delay in adjudicating Mr. Hardin's direct appeal violated his rights under the due process and equal protection clauses of the United States Constitution;

4. The trial court's "acquittal first" instructions in Mr. Hardin's case interfered with the jury's ability to consider lesser included offenses thus depriving Mr. Hardin of his Fifth, Sixth and Fourteenth Amendment rights under the United States Constitution;

5. The trial court erred in failing to provide testimony requested by the jury during its deliberations thus violating Mr. Hardin's rights as guaranteed by the United States Constitution;

6. The Court's over 12-year delay in resolving Mr. Hardin's Crim. P. 35(c) motion violated Mr. Hardin's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and the corresponding Colorado Constitution;

7. The denial of Mr. Hardin's right to counsel of choice violated the Sixth and Fourteenth Amendments of the United States Constitution and clearly established federal law;

8. Mr. Hardin's appellate counsel rendered ineffective assistance of counsel by failing to raise "counsel of choice" on direct appeal as this clearly violated his constitutional rights and clearly established federal law;

9. Counsel was ineffective at Mr. Hardin's trial thus violating Mr. Hardin's constitutional rights pursuant to the Sixth and Fourteenth Amendments;

10. Delay in the re-sentencing of Mr. Hardin of 15 years from the Court of Appeals mandate in 88CA1898 requiring re-sentencing issued in 1998 following denial of a petition for certiorari to the Colorado Supreme Court, commensurate with the delay in re-sentencing of Mr. Hardin of 12 years from the Court of Appeals mandate in 99CA2405 requiring re-sentencing in 2001 violates due process, speedy trial rights, and amounts to cruel and unusual punishment.

(Doc. # 6).

On November 30, 2017, Magistrate Judge Gordon P. Gallagher ordered Respondents to file a Pre-Answer Response limited to addressing the affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court remedies pursuant to 28 U.S.C. § 2254(b)(1)(A) if they intended to raise either or both of those defenses in this action. (Doc. # 7). After receiving an extension of time, Respondents filed their Pre-Answer Response (Doc. # 13) on January 18, 2018, arguing that the Application appeared timely but that Claims One, Two, Four, Five, Seven, Eight, Nine and Ten were procedurally defaulted. Additionally, Respondents argued that Claims One and Two were moot, and Claims Three, Six, and (part of) Nine failed to present a cognizable habeas claim. Mr. Hardin filed a Reply (Doc. # 16) on March 8, 2018, and a Supplement to the Reply (Doc. # 17) on March 30, 3018.

The Court reviewed the Pre-Answer Response, the Reply, and the Supplement to the Reply, and filed an Order to Dismiss in Part and for an Answer on May 4, 2018. *See* (Doc. # 22). In the May 4 Order, the Court determined that Claims One, Four, Seven, Eight and Ten were procedurally defaulted and barred from federal habeas review. *Id.* Additionally, Claim Two was dismissed as moot and Claim Six was dismissed for failure to state a cognizable habeas claim. *Id.* Respondents were

directed to file an answer in compliance with Rule 5 of the Rules Governing Section 2254 Cases that fully addressed the merits of Claims Three and Five. *Id.* Additionally, pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012), the Court deferred ruling on the applicability of a procedural bar to the ineffective assistance of counsel allegations asserted in Claim Nine, pending receipt of the state court record and Respondents' argument in the Answer as to whether the claim is substantial.

Respondents filed an Answer on June 28, 2018. (Doc. # 30). Applicant was granted an extension of time to file a Reply. He filed a Traverse on August 22, 2018. (Doc. # 33). After reviewing the Amended Application, the Answer, the Traverse, and the state court record, the Court concludes, for the following reasons, that the Application should be denied and the case dismissed with prejudice.

## II. **HABEAS CLAIMS**

The remaining claims for review on the merits, Claims Three and Five, are as follows:

(3) The over eight-year delay in adjudicating Mr. Hardin's direct appeal violated his rights under the due process and equal protection clauses of the United States Constitution;

(5) The trial court erred in failing to provide testimony requested by the jury during its deliberations thus violating Mr. Hardin's rights as guaranteed by the United States Constitution.

Additionally, Claim Nine, which was procedurally defaulted, but might be subject to review pursuant to *Martinez v. Ryan* is:

(9) Counsel was ineffective at Mr. Hardin's trial thus violating Mr. Hardin's constitutional rights pursuant to the Sixth and Fourteenth Amendments.

(Doc. # 6).

### III.  LEGAL STANDARDS

Section 2254(d) provides that a writ of habeas corpus may not be issued with

respect to any claim that was adjudicated on the merits in state court, unless the state

court adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).

The Court reviews claims of legal error and mixed questions of law and fact

pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir.

2003).  The threshold question pursuant to § 2254(d)(1) is whether Applicant seeks to

apply a rule of law that was clearly established by the Supreme Court at the time her

conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  The "review

under § 2254(d)(1) is limited to the record that was before the state court that

adjudicated the prisoner's claim on the merits."  *Cullen v. Pinholster*, 563 U.S.170, 181

(2011).  "Finality occurs when direct state appeals have been exhausted and a petition

for writ of certiorari from this Court has become time barred or has been disposed of."

*Greene v. Fisher*, 565 U. S. 34, 39 (2011) (citing *Griffith v. Kentucky*, 479 U.S. 314, 321,

n.6 (1987).

Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id.* at 1018. If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.' " *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply. *Carter* [*v. Ward*], 347 F3d. [860,] 864 [10th Cir. 2003) (quoting *Valdez* [*v. Ward*, 219 F.3d [1222] 1229-30 [10th Cir. 2000]).

8

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. In addition,

> evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted). The Court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. at 102. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citation omitted). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for

9

ordinary error correction through appeal." *Id.* at 102-03 (internal quotation marks and citation omitted).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671. Furthermore,

> [a]s a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

The Court reviews claims of factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct, *see Sumner v. Mata*, 455 U.S. 591, 592-93 (1982), and Applicant bears the burden of rebutting the presumption by clear and convincing evidence, *see Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997). "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

A claim, however, may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim. *Richter*,

562 U.S. at 98 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning").  Furthermore, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id*. at 99.

In other words, the Court "owe[s] deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, the Court "must uphold the state court's summary decision unless [its] independent review of the record and pertinent federal law persuades [it] that [the] result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id*. at 1178.  "This 'independent review' should be distinguished from a full de novo review of the [applicant's] claims." *Id.* (citation omitted).  Likewise, the Court applies the AEDPA (Antiterrorism and Effective Death Penalty Act) deferential standard of review when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal standard.  *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005).  If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply.  *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

# IV.    ANALYSIS

**Claim Three**

Mr. Hardin alleges in Claim Three that his due process and equal protection rights were violated because of the over eight-year delay in adjudicating his direct appeal.  The Colorado Court of Appeals addressed the merits of this claim and rejected it as follows:

> Defendant asserts that, because of delay in the adjudication of his direct appeal, he was denied his rights to due process, equal protection, and the effective assistance of counsel.  Even assuming that the constitutional right to due process includes a right to a reasonably prompt disposition of a direct appeal, we find no violation of that right here.
>
> In evaluating due process claims of denial of the right to a speedy appeal, courts have used a four-factor balancing test similar to that used for examining alleged speedy trial violations. *See Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L.Ed.2d 101 (1972) (setting forth speedy trial test); *Simmons v. Beyer*, 44 F.3d 1160 (3rd Cir. 1995) (applying *Barker* test in speedy appeal context).  The factors include: (1) the length of delay; (2) the reason for delay; (3) the defendant's assertion of the right; and (4) prejudice to defendant.  *Simmons v. Beyer, supra*; *Harris v. Champion*, 15 F.3d 1538 (10th Cir. 1994).
>
> The reason for the delay is a critical factor in the analysis.  In the absence of state-action, there can be no due process or other constitutional violation. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 102 S. Ct. 2764, 73 L.Ed.2d 418 (1982); *Sceifers v. Trigg*, 46 F.3d 701 (7th Cir. 1995).
>
> The delay cannot be attributed to the state based on the record before us.  Rather, the delay resulted from a series of continuances in the post-conviction proceedings and delays in proceeding with the direct appeal, all requested by defense counsel.
>
> Defendant argues that the various post-conviction and appellate counsel who represented him were providing ineffective assistance, and that such ineffective assistance can be attributed to the state.  However, our review here is on direct appeal. We cannot discern from the record whether any particular attorney's representation was legally deficient, let alone whether it can be attributed to the state.  Because the issue can be better resolved

in a post-conviction proceeding under Crim. P. 35(c), we do not address it on this direct appeal. *See People v. Thomas*, 867 P.2d 880 (Colo. 1994).

Nor do we find, as defendant suggests, that this court was a cause of delay. Initially, we note that defendant had to elect between pursuing his direct appeal or his ineffective assistance claim. *People v. Dillon*, 655 P.2d 841 (Colo. 1982) (jurisdiction may not rest simultaneously in both a district court and an appellate court).

Here, the record indicates defendant initially requested the remand. The division to which the appeal had been assigned issued an order requiring that all post-conviction and appellate counsel submit status reports every thirty days to keep the court apprised of the Crim. P. 35(c) proceedings. The court also issued numerous orders to show cause why the remand should not be vacated and the appeal allowed to proceed, on one occasion even vacating the limited remand and having counsel appear. Each time, defendant expressed his desire to continue the remand pending resolution of the Crim. P. 35(c) proceeding.

We therefore conclude that the record before us fails to establish that delay in proceeding with defendant's appeal was caused by state action or can be attributed to state action. Thus, at least on this direct appeal, defendant's due process and equal protection claims must be rejected. *See Rendell-Baker v. Kohn, supra*; *Sceifers v. Trigg, supra*.

(Doc. # 13-2 at 7-9) (*Hardin I*).

Mr. Hardin is not entitled to relief under § 2254(d)(2) with respect to Claim Three because the claim is not premised on any factual error. Therefore, Mr. Hardin is entitled to relief only if the decision of the Colorado Court of Appeals was contrary to or an unreasonable application of clearly established federal law under § 2254(d)(1). According to Respondents, relief under § 2254(d)(1) is not available because there is no clearly established federal law regarding the right to a speedy appeal.

If there is no clearly established federal law, that is the end of the Court's inquiry under § 2254(d)(1). *House*, 527 F.3 at 1018. Clearly established federal law "refers to

the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case sub judice. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House*, 527 F.3d at 1016.

Mr. Hardin argues that the clearly established federal law of *Barker v. Wingo*, 407 U.S. 514 (1972), applies to his claim. Indeed, the Colorado Court of Appeals cited to the holding of *Barker* in rejecting Mr. Hardin's claim. *See* (Doc. # 13-2 at 7-9). However, the United States Supreme Court's holding in *Barker* established only the contours of the right to a speedy trial, not the right to a speedy appeal. *Barker,* 407 U.S. at 515-516. The Supreme Court did not expressly extend its holding in *Barker* to apply to the right of a speedy appeal. Although a majority of circuit courts, including the Tenth Circuit, have held that an excessive appellate delay may violate the Due Process Clause in some circumstances, *see Harris v. Champion*, 15 F.3d 1538 (10th Cir. 1994), there is no Supreme Court precedent establishing such a constitutional right. The Supreme Court has explained that "[i]f this Court has not broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar." *Williams v. Taylor*, 529 U.S. 362, 381 (2000). Therefore, although this Court has serious concerns over the lengthy delay Mr. Hardin experienced during his appellate and postconviction proceedings, there is no Supreme Court decision holding that

excessive delay in a direct appeal is a violation of the Due Process Clause of the United States Constitution.

The absence of clearly established federal law ends the Court's inquiry under § 2254(d)(1). *See House*, 527 F.3d at 1018. For these reasons, Mr. Hardin is not entitled to relief with respect to Claim Three.

**Claim Five**

In Claim Five, Mr. Hardin argues that the trial court erred in failing to provide testimony requested by the jury during its deliberations, which violated his constitutional rights. During deliberations, the jury made a written request for a transcript of the testimony of Lloyd Rhodes, the robbery victim who had escaped. Although the trial transcripts and state court record provided to this Court do not provide the specifics of the jury's question or the trial court's answer, the parties do not dispute that: the jury submitted a request for the transcript of the testimony of Lloyd Rhodes; the trial court consulted with the parties regarding the jury's request; the parties did not object to the trial court's response to the jury, which was: "No transcript of Lloyd's testimony has been prepared from the Reporter's shorthand notes. Please rely on your individual and collective memories of the testimony." *See* (Doc. # 13-1 at 3, 33).

The Colorado Court of Appeals rejected this claim as follows:

Defendant contends the trial court erred in failing to provide a transcript of testimony that the jury requested during deliberations. We conclude to the contrary.

During its deliberations, the jury asked for a copy of the testimony of the robbery victim who had managed to escape from the house. After consulting with the prosecutor and defense counsel, the trial court responded to the jurors' request by telling them that no transcript had

been prepared and that they would have to rely on their individual and collective memories of the evidence.

It is within the trial court's discretion whether to read all or part of the testimony of one or more witnesses in response to a jury's request during its deliberations. *Settle v. People*, 180 Colo. 262, 504 P.2d 680 (1972); *Franklin v. People*, 734 P.2d 133 (Colo. App. 1986).

Here, defendant did not object to the trial court's response to the jury's question. We must therefore determine whether the trial court's exercise of its discretion amounts to plain error. *Walker v. People*, 932 P.2d 303 (Colo. 1997).

The trial court explained in its response to the jury that a transcript had not been prepared. Nothing in the record indicates that defendant was prejudiced by the response. Indeed, defense counsel may have made the tactical decision not to have the testimony read to avoid possible prejudice to defendant.

In these circumstances, we cannot say the trial court's response to the jury's request so undermined the fundamental fairness of defendant's trial as to cast substantial doubt on the reliability of the judgment of conviction. *See Walker v. People, supra*; *Franklin v. People, supra*.

(Doc. # 13-2 at 10-11) (*Hardin I*).

Mr. Hardin is not entitled to relief under § 2254(d)(2) with respect to Claim Five because the claim is not premised on any factual error. Therefore, Mr. Hardin is entitled to relief only if the decision of the Colorado Court of Appeals was contrary to or an unreasonable application of clearly established federal law under § 2254(d)(1). In the Answer, Respondents argue that it is unaware of any authoritative decision of the Supreme Court regarding a trial court's response to a deliberating jury's request for a transcript. (Doc. # 30 at 26).

In his Amended Application, Applicant fails to identify any clearly established federal law that renders the trial court's decision and response to the jury's question

unconstitutional under these circumstances.  In his Traverse, Mr. Hardin argues that the trial court's refusal to read-back the requested testimony denied him a fair trial as was clearly established in *Bruton v. United States*, 391 U.S. 123, 135 (1968) and *Screws v. United States*, 325 U.S. 91, 107 (1965).  (Doc. # 33 at 12).  In *Bruton*, the Supreme Court held that the Sixth Amendment rights of a defendant are violated if the defendant's non-testifying codefendants make an extrajudicial confession that implicates the defendant and the Government introduces the confession into evidence at their joint trial, even if the jury is instructed to consider the evidence only against the codefendant.  *Bruton*, 391 U.S. at 137.  In *Screws*, the Supreme Court held that the term "willful[]" in the federal criminal statute regarding civil rights violations, means either "particular purpose" or "reckless disregard."  *See, e.g.*, *United States v. Johnstone*, 107 F.3d 200, 208–09 (3d Cir. 1997) (discussing *Screws*).

Neither of these Supreme Court cases relied upon by Mr. Hardin involve facts that are at all similar or closely related to this case.  Further, the Supreme Court did not expressly extend the legal rules articulated in *Bruton* and *Screws* to the circumstances in this case.

Additionally, the Court has not found any clearly established federal law regarding a trial court's responsibilities to allow a jury access to trial transcripts.  *See, e.g.*, *Burns v. Lafler*, 328 F. Supp. 2d 711, 723 (E.D. Mich. 2004) ("There is no United States Supreme Court decision requiring judges to re-read testimony or to provide transcripts to jurors upon their request.").  Therefore, the Court agrees with Respondents that there is no clearly established federal law relevant to the specific

constitutional argument presented in Claim Five.  As noted above, the absence of

clearly established federal law ends the Court's inquiry under § 2254(d)(1).  *See House*,

527 F.3d at 1018.  For these reasons, Mr. Hardin is not entitled to relief with respect to

Claim Five.

**Claim Nine**

In claim nine, Applicant asserts that he received ineffective assistance of trial

counsel because his trial counsel:

(i)  failed to investigate and present evidence favorable to Mr. Hardin, including:

(A) evidence that would have challenged the star-prosecution witness, Mr. Rhodes;

(B) evidence that Anna Marie Gutierrez's view of the street and alley area were obstructed;

(C) inconsistencies between Mr. Rhodes' rendition of the events and other evidence;

(D) failure to impeach police investigation;

(E) failure to elicit evidence of criminal history of Mr. Irving;

(F) failure to interview and present testimony of witnesses favorable to Mr. Hardin's defense, including Consuela Gutierrez, David Huff, Allen Guss, Daniel Billings, and Chico Hurst; and

(ii)  failed to properly object, including:

(A) failed to object to indictment which charged all aggravated robberies in one count;

(B) failed to object to the sentences for felony murder since Mr. Hardin was acquitted of the underlying felony;

(C) failed to object to Mr. Hardin's sentences for aggravated robbery since he was acquitted of aggravated robbery;

(D) failed to object to the convictions and sentences on both the felony murder and the underlying felony;

(E) failed to object to the trial court's 'acquittal first' instruction;

(F) failed to object when the trial court refused to provide Lloyd Rhodes testimony to the jury upon its request.

*See* (Doc. # 6 at 34-41).

As discussed in the Order to Dismiss in Part, Mr. Hardin's postconviction counsel included the ineffective assistance of trial counsel sub-claims based on failure to investigate and present evidence (sub-claims (i)(A) through (i)(F)) in the initial-review collateral proceeding. However, those sub-claims were not presented on postconviction appeal and, therefore, they are procedurally barred. *See* (Doc. # 22 at 15-17).

As for the sub-claims involving trial counsel failing to object (sub-claims (ii)(A) through (ii)(F)), in the Order to Dismiss in Part, the Court stated that "it appears [Mr. Hardin's] postconviction counsel failed to assert an ineffective assistance of trial counsel claim based on numerous failures of counsel to object. Applicant initially included such a claim in his opening brief on direct appeal and the claim is included as part of claim nine in this habeas action." (Doc. # 22 at 22.) As noted, these ineffective assistance sub-claims based on trial counsel failing to object were included in Mr. Hardin's opening brief on direct appeal. (Doc. # 13-1 at 36-39.) However, the Colorado Court of Appeals failed to address the merits of the sub-claims, concluding that an assertion of ineffective assistance of counsel "can be better resolved in a post-conviction proceeding." (Doc. # 13-2 at 11) (*Hardin I*). If Mr. Hardin's postconviction counsel provided ineffective assistance of counsel by failing to assert these claims in his initial postconviction

motion, and the claims are "substantial," the procedural default will be excused pursuant to *Martinez v. Ryan*.

As such, in the Order to Dismiss in Part (Doc. # 22), the Court deferred ruling on the Respondents' assertion of the procedural default defense with respect to the Applicant's ineffective assistance of counsel claims based on trial counsel failure to object (sub-claims (ii)(A) through (ii)(F)), pursuant to *Martinez v. Ryan*. In *Martinez*, the Supreme Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez*, 566 U.S. at 17. To constitute cause to excuse a procedural default, Applicant must show that he received ineffective assistance of postconviction counsel and that the procedurally defaulted ineffective assistance of trial counsel claim is "substantial"— i.e., has "some merit." *Id.* at 15.

In his Traverse, Mr. Hardin points out that in the Order to Dismiss in Part, the Court references that he must show that his ineffective assistance of trial counsel claims have "substantial merit." *See* (Doc. # 33 at 15); *see also* (Doc. # 22 at 25). Mr. Hardin is correct that to demonstrate cause for the procedural default under *Martinez*, the ineffective assistance of trial counsel claim must just have "some merit;" the claim is not required to have "substantial merit." The specific wording of *Martinez* states that in order for a claim to be "substantial" claim, the prisoner must

> demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must

20

> demonstrate that the claim has some merit. Cf. *Miller–El v. Cockrell,* 537
> U.S. 322 [123 S.Ct. 1029, 154 L.Ed.2d 931] (2003) (describing standards
> for certificates of appealability to issue).

*Martinez*, 566 U.S. at 15. Under the standard for issuing a certificate of appealability, which the *Martinez* Court incorporated in its definition of substantiality, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El*, 537 U.S. at 336, (internal quotation marks and alterations omitted).

In the Answer, Respondents argue that the procedural default of these claims cannot be excused pursuant to *Martinez v. Ryan* because the sub-claims (ii)(A), (B), (C), and (F) were raised by postconviction counsel during the initial postconviction proceedings and sub-claims (ii)(D) and (E) are not substantial.

**Sub claims (ii)(A), (B), (C), and (F)**

Although not previously argued, Respondents now assert that the ineffective assistance of counsel sub-claims (ii)(A), (B), (C), and (F) were raised and argued by postconviction counsel during the initial-review postconviction proceedings. (Doc. # 30 at 32-36). To support their argument that the sub-claims were raised and argued by postconviction counsel during the initial-review postconviction proceedings, Respondents cite to the "Supplemental To Pro Se Motion for Post-Conviction Review Filed on September 17, 1999, Pursuant to Crim. P. 35(c) and Request for Witness Testimony and Hearing on All Claims," ("Supplement to the 35(c) Motion") (Doc. # 30-2), which was provided to this Court for the first time when the Respondents filed their

21

Answer.  The Court has reviewed the Supplement to the 35(c) Motion, which included ineffective assistance of trial counsel claims for failure to object to a duplicitous charge, failure to object to trial court's response to the jury's questions regarding the testimony of Mr. Rhodes, failure to object to an incomplete *Curtis*-advisement, and failure to object to and impeach prejudicial identification of participants by witnesses.  (Doc. # 30-2 at 36-42).

The claim in the Supplement to the 35(c) Motion regarding ineffective assistance of trial counsel for failure to object to a duplicitous charge corresponds to sub-claim (ii)(A) in the instant habeas application for failure to object to the indictment which charged all aggravated robberies in one count.  Similarly, the claim in the Supplement to the 35(c) Motion regarding ineffective assistance of trial counsel for failure to object to the trial court's response to the jury's questions regarding the testimony of Mr. Rhodes corresponds to sub-claim (ii)(F) in the instant habeas application for failure to object when the trial court refused to provide Lloyd Rhodes testimony to the jury upon its request.  Thus, sub-claims (ii)(A) and (ii)(F) were presented by Mr. Hardin's postconviction counsel during the initial postconviction proceedings.  Therefore, the procedural default of these claims cannot be excused by *Martinez*.  Sub-claims (ii)(A) and (ii)(F) will be dismissed as procedurally barred.

Respondents also argue that sub-claims (ii)(B) and (ii)(C) were raised by postconviction counsel during the initial review postconviction proceedings.  As support for this argument, Respondents cite to the claim presented in the Supplement to the 35(c) Motion regarding ineffective assistance of trial counsel for failure to object to a

duplicitous charge.  The claim in the Supplement to the 35(c) Motion was based on ineffective assistance of trial counsel for failure to object to the charges included in the indictment, not trial counsel's failure to object to Mr. Hardin's sentence.  Both sub-claims (ii)(B) and (ii)(C) are based on trial counsel's failure to object to Mr. Hardin's sentence. Thus, contrary to the argument by Respondents, after review of the Supplement to the 35(c) Motion (Doc. # 30-2), the Court cannot confirm that sub-claims (ii)(B), failure to object to the sentences for felony murder since Mr. Hardin was acquitted of the underlying felony, and (ii)(C), failure to object to Mr. Hardin's sentences for aggravated robbery since he was acquitted of aggravated robbery, were raised during the initial postconviction proceedings.

Therefore, pursuant to *Martinez*, if these ineffective assistance of trial counsel claims are substantial and Mr. Hardin's postconviction counsel provided ineffective assistance by failing to raise them, the procedural default of the claims may be excused.

To establish that counsel was ineffective, Applicant must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  If Applicant fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed.  *See Strickland*, 466 U.S. at 697.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  "A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within a wide range of reasonable professional assistance."  *United States v. Rushin*, 642 F.3d 1299, 1306

(10th Cir. 2011) (citations and internal quotation marks omitted).  It is an applicant's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances, *see Strickland*, 466 U.S. at 689, and that the errors were so serious that "counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment," *Rushin*, 642 F.3d at 1307 (quoting *Richter*, 562 U.S. at 104) (emphasis, citation, and internal quotation marks omitted).  An applicant must show counsel failed to act "reasonab[ly] considering all the circumstances." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 688).

Under the prejudice prong, an applicant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland,* 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  In assessing prejudice under *Strickland,* the question is whether it is reasonably likely the result would have been different.  *Richter*, 562 U.S. at 111.  "The likelihood of a different result must be substantial, not just conceivable."  *Id.* at 112 (citing *Strickland*, 466 U.S. at 693).

Mr. Hardin has failed to demonstrate that his ineffective assistance of trial counsel claims in sub-claims(ii)(B) and (ii)(C) are substantial and/or that his postconviction counsel provided ineffective assistance by failing to raise the claims.

Sub-claim (ii)(B) alleges that Mr. Hardin received ineffective assistance of counsel because his trial counsel failed to object to the sentences for felony murder since Mr. Hardin was acquitted of the underlying felony.  Apparently, Mr. Hardin is referring to the fact that he was acquitted of the aggravated robbery charge as to Mr.

Fisher but sentenced to felony murder as to Mr. Fisher. He was originally sentenced to felony murder as to Mr. Irving also, but the Colorado Court of Appeals vacated the conviction and sentence for felony murder as to Mr. Irving because he had also been convicted and sentenced for the underlying felony of aggravated robbery of Mr. Irving, (Doc. #13-2 at 3-5) (*Hardin I*). Therefore, the appellate court vacated the felony murder conviction as to Mr. Irving and remanded for the trial court to sentence Mr. Hardin for murder after deliberation as to Mr. Irving. (*Id.*).

The felony murder sentence as to Mr. Fisher was based on the felony aggravated robberies of Mr. Irving and Mr. Rhodes. *See* (*id.* at 2) (noting that "the verdicts reflect that the jury found defendant not guilty of robbing one of the two men who were murdered, but guilty of felony murder because the murder of that victim occurred during the course of the robbery of the other two."). Therefore, Mr. Hardin's underlying premise that he should not have been sentenced for felony murder of Mr. Fisher because he was acquitted of felony aggravated robbery of Mr. Fisher lacks merit. Because the underlying issue lacks merit, Applicant's claim that he received ineffective assistance of trial counsel based on his counsel's failure to object to his sentence for felony murder fails. *See Lafler v. Cooper*, 123 S.Ct. 1376, 1386 (2011) (recognizing that an ineffective assistance of counsel claim fails if the underlying premise on which it is based lacks merit). As a result, the procedural default of sub-claim (ii)(B) is not excused pursuant to *Martinez* and it will be dismissed.

In sub-claim (ii)(C), Mr. Hardin alleges that he received ineffective assistance of counsel because his trial counsel failed to object to the sentences for aggravated

robbery since he was acquitted of aggravated robbery. Apparently, Mr. Hardin is referring to the fact that he was acquitted of the aggravated robbery charge as to Mr. Fisher and that he was only charged with one count of aggravated robbery for all three men in the indictment. Therefore, because he was only charged with one count of aggravated robbery and he was acquitted of robbing one of the men, Applicant is apparently arguing that he received ineffective assistance of trial counsel by his counsel failing to object to his sentence for aggravated robbery. However, this claim lacks merit because the underlying issue lacks merit. In *Hardin I*, the Colorado Court of Appeals held that there was either a constructive amendment to or a variance from the original count in the indictment and Mr. Hardin failed to demonstrate any prejudice resulting from the manner in which the aggravated robberies were charged. (ECF No. 13-2 at 6) (*Hardin I*). Thus, Mr. Hardin's trial counsel was not ineffective for failing to object to his sentence for aggravated robbery. Further, Mr. Hardin's postconviction counsel did not provide ineffective assistance by failing to raise an issue of ineffective assistance of trial counsel based on this sub-claim. Sub-claim (ii)(C) is not substantial under *Martinez* and Mr. Hardin's postconviction counsel did not provide ineffective assistance by failing to raise the claim, and therefore, it is barred as procedurally defaulted.

**Sub-claims (ii)(D) & (ii)(E)**

Respondents argue that the procedural default of sub-claims (ii)(D) and (ii)(E) should not be excused because the claims are not substantial. In sub-claim (ii)(D), Applicant argues he received ineffective assistance of trial counsel because his counsel failed to object to the convictions and sentences on both the felony murder and the

underlying felony.  (Doc. # 13-1 at 38).  However, this issue was resolved on direct appeal.  The appellate court agreed that Mr. Hardin could not be sentenced for both felony murder against Mr. Irving as well as the underlying felony of aggravated robbery against the same victim.  Therefore, the appellate court remanded the case for the trial court to vacate the felony murder conviction as to Mr. Irving and enter a conviction and sentence for murder after deliberation instead.  (Doc. # 13-2 at 3-5, 11) (*Hardin I*) ("The cause is remanded for the trial court to amend the judgment of conviction, sentence, and mittimus by vacating defendant's conviction for the felony murder of the victim the jury found was both robbed and murdered, entering a judgment of conviction for the murder after deliberation of that victim, and resentencing defendant accordingly").  Therefore, there was no need for postconviction counsel to raise this issue during the postconviction proceedings because it had already been resolved.  As a result, Mr. Hardin's postconviction counsel was not ineffective for failing to raise the claim and sub-claim (ii)(D) is barred as procedurally defaulted.

In sub-claim (ii)(E), Applicant argues that he received ineffective assistance of trial counsel because his counsel failed to object to the trial court's "acquittal first" instruction.  However, this underlying issue was also resolved on direct appeal.  The Colorado Court of Appeals held that the jury instruction, which was requested by the Defendant, was approved by established precedent in *People v. Padilla*, 638 P.2d 15 (Colo. 1981).  (Doc. # 13-2 at 9) (*Hardin I*).  Thus, Mr. Hardin's trial counsel was not ineffective for failing to object to an instruction that was consistent with controlling state precedent.  Further, Mr. Hardin's postconviction counsel did not provide ineffective

assistance by failing to raise an issue of ineffective assistance of trial counsel based on this sub-claim. Sub-claim (ii)(E) is not substantial under *Martinez* and Mr. Hardin's postconviction counsel did not provide ineffective assistance by failing to raise the claim, and, therefore, the claim is barred as procedurally defaulted.

## V.    **CONCLUSION**

Based on the above findings, it is

ORDERED that the Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, Doc. # 6, is DISMISSED WITH PREJUDICE. It is

FURTHER ORDERED that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c). It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order is not taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of appeal. *See Coppedge v. United States*, 369 U.S. 438 (1962). If Applicant files a notice of appeal he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED: May 7, 2019

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge

28